Law Office of Mark Boling
Mark Boling, State Bar No. 101589
maboling@earthlink.net
21986 Cayuga Lane
Lake Forest, CA 92630
(949) 588-9222
(949) 588-7078 [fax]

Clint Krislov / M. Reas Bowman
clint@krislov.com / reas@krislovlaw.com
KRISLOV & ASSOCIATES, LTD.
20 N. Wacker, Ste. 1350
Civic Opera House
Chicago, Illinois 60606
(312) 606-0500
(312) 606-0207 [fax]

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| MADELYN MAHFOOD<br><br>Plaintiff(s),<br><br>v.<br><br>QVC, Inc., a corporation;<br>Defendants. | Case No. SACV 06-0659-AG (ANx)<br><br>Date Action Filed: 6/16/06 – CLASS ACTION<br><br>PLAINTIFF'S REPLY TO QVC'S OPPOSITION PLAINTIFF MAHFOOD'S MOTION FOR CLASS CERTIFICATION (REDACTED)<br>Date: September 22, 2008<br>Time: 10:00 a.m.<br>Ctrm: 10D  714-338-4757 |
|---|---|

This document is subject to a Confidentiality Agreement and Protective Order issued by the Court and may not be examined or copied except in compliance with that Order.  Mahfood v. QVC, Inc., et al., Case No. SACV 06-0659-AG (ANx)

Dated: August 22, 2008                    /s/ M. Reas Bowman
                                          M. Reas Bowman
                                          Attorney for Plaintiff Madelyn Mahfood

i

Law Office of Mark Boling
Mark Boling, State Bar No. 101589
maboling@earthlink.net
21986 Cayuga Lane
Lake Forest, CA 92630
(949) 588-9222
(949) 588-7078 [fax]

Clint Krislov / M. Reas Bowman
clint@krislov.com / reas@krislovlaw.com
KRISLOV & ASSOCIATES, LTD.
20 N. Wacker, Ste. 1350
Civic Opera House
Chicago, Illinois 60606
(312) 606-0500
(312) 606-0207 [fax]

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| | |
|---|---|
| MADELYN MAHFOOD<br><br>Plaintiff(s),<br><br>v.<br><br>QVC, Inc., a corporation;<br>Defendants. | Case No. SACV 06-0659-AG (ANx)<br><br>Date Action Filed: 6/16/06 – CLASS ACTION<br><br>PLAINTIFF'S REPLY TO QVC'S OPPOSITION PLAINTIFF MAHFOOD'S MOTION FOR CLASS CERTIFICATION (REDACTED)<br>Date: September 22, 2008<br>Time: 10:00 a.m.<br>Ctrm: 10D  714-338-4757 |

/ / / / /

/ / / / /

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 3

I.    Rule 23(b)(2) Certification is Warranted Because it Provides Ideal Relief
      to the Most California Consumers ................................................................... 3

      A.    Despite QVC's Protestations to the Contrary, Enjoining QVC's
            Deceptive "Retail Value" and "Introductory Price"
            Representations, From Which All Damages Sought Directly
            Flow Directly, Is Clearly the Primary Motivation of This
            Litigation ............................................................................................. 3

      B.    Mahfood Purchasing QVC Products Advertised with "Retail
            Value" and "Introductory Price" Representations Provide Her
            With Standing to Enjoin QVC's Deceptive Business Practices
            Directly Relating to these Misrepresentations ..................................... 6

II.   Certification Under Rule 23(b)(3) Is Also Proper Based on QVC's
      Uniform Material Misrepresentations Made to All Class Members ................... 9

      A.    The Undisputedly Common Issues of QVC's "Retail Value"
            and "Introductory Price" Misrepresentations Predominate ................... 9

            1.    QVC Subjected All of Its Jewelry Customers to the Same
                  Deceptive and Unfair "Retail Value" Practice ........................... 9

            2.    QVC's "Introductory Price" Designation Commonly
                  Misleads All Customers that the Jewelry Product Is New
                  and Being Offered at a Reduced Price for a Limited Time ........... 13

      B.    The Common Presumption that QVC's Uniform "Retail
            Value" and "Introductory Price" Representations Are
            Material and Made to Every Class Member Predominates
            Over Any Individual Reliance Issues ..................................................... 16

1.   Individual Issues of Reliance Do Not Predominate Here
Because the Presumption of Reliance Provided by the
California Supreme Court in *Vasquez*, and Numerous
Ninth Circuit Courts Since, Applies to this Case....................18

2.   Regardless of Whether QVC Customers Had Other
Motivations for Purchasing QVC Jewelry, the Court
Can Presume Reliance on QVC's "Retail Value" and
"Introductory Price" Representations Because Both
Representations Are Material .........................................................20

III.   Certification of Mahfood's Class is the Superior Means of Adjudicating
These Claims Against QVC................................................................................22

A.   Mahfood's Class Consisting of All California Residents Who
Purchased QVC Jewelry Products Disclosed with an RV or
IP Selling Price is Manageable Because Every Class Member
Can State the Same Claims Against QVC as Plaintiff Mahfood ..............22

1.   All Class Members Can State a Claim Under the CLRA
and UCL Because QVC's RV and IP Material Representations
Are Likely to Mislead a Reasonable Consumer, All of Whom
Received QVC's Uniform Misrepresentations and Made
Purchases Consistent with Those Misrepresentations ...................22

(a) *UCL Damage:  All Class Members Can Show the Requisite*
*"Injury in Fact" Because Every Class Member Expended*
*Money Due to QVC's Deceptive Business Practice* .................23

(b) *CLRA Damage:  All Class Members Suffered "Injury in*
*"Fact" under the More-Lenient CLRA Standard Because*
*Each Suffered the Invasion of a Legally Protected Interest –*
*QVC's Deceptive Advertisements* ..............................................24

2.   All Class Members Can State a Breach of Contract Claim
Against QVC for Its Misleading Representations Inducing

Class Members Into Entering Into a Contract with QVC ............... 26

　　　　　3.　　All Class Members Have Claims Against QVC for Unjust

　　　　　　　　Enrichment Based on QVC Unjustly Retaining the Class

　　　　　　　　Members' Fraudulently Induced Payments ................................... 28

　　B.　　Alternatively, this Court May Certify the More Limited Classes

　　　　　Mahfood Sets Forth in Her Class Certification Brief .............................. 29

IV.　Plaintiff Satisfies the Requisites of Rule 23(a), of which QVC Only

　　　Disputes Typicality and Mahfood's Adequacy in Representing the

　　　Class .......................................................................................................... 31

　　A.　　Mahfood's Claims Against QVC Are Typical of the Entire

　　　　　Class's Claims Against QVC for Its Misleading "Retail Value"

　　　　　and "Introductory Price" Representations .................................... 31

　　　　　1.　　Mahfood Does Have Standing to Seek Injunctive Relief

　　　　　　　　for Herself and the Class, But She Meets Typicality

　　　　　　　　Regardless ....................................................................... 32

　　　　　2.　　No Unique Defenses Pertain to Mahfood that Affect

　　　　　　　　Typicality ......................................................................... 33

　　　　　3.　　QVC's Supposed "Individual Inquiries" Among the Class

　　　　　　　　Are Issues of Predominance, Not Typicality .................................. 34

V.　　Mahfood and Her Counsel Will Adequately Protect the Class ........................... 35

CONCLUSION ................................................................................................ 35

1

# TABLE OF AUTHORITIES

2

<u>Cases</u>

3   Abels v. JBC Legal Group, P.C., 227 F.R.D. 541 (N.D. Cal. 2005) ..........................5

4   Acoustics, Inc. v. Trepte Construction Co., 14 Cal. App. 3d 887 (1971) ...............26

5   American Home Products Corp. v. F.T.C. 695 F.2d 681 (3rd Cir. 1982)................11

6   Anderson v. Riverside Chrysler Jeep, 2007 WL 3317819

7       (Cal. App. 4th Dist. Nov. 8, 2007) ..............................................................23, 25

8   Armstrong v. Davis, 275 F.3d 849 (9th Cir. 2001) .................................................31

9   Bagdasarian v. Gragnon, 31 Cal. 2d 744 (1948) ..................................................24

10  Californians for Disability Rights, Inc. v. Cal. Dept. of Transp.,

11      249 F.R.D. 334 (N.D. Cal. 2008) .............................................................31, 34

12  Caro v. Proctor and Gambel Co., 22 Cal. Rptr. 2d 419 (Cal. Ct. App. 1993)..........20

13  Cattie v. Wal-Mart Stores, Inc., 504 F.Supp. 2d 939 (S.D. Cal. 2007) .....................8

14  Cervantez v. Celestica Corp., 2008 WL 2949377 (C.D. Cal. Jul. 30, 2008) ...................32, 35

15  Colgan v. Leatherman Tool Group, Inc., 135 Cal. App. 4th 663 (2d Dist. 2006) ...................30

16  Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy, 4 Cal. App. 4th 963 (1st Dist.

17      1992) ................................................................................................................7

18  Davisson v. Faucher, 105 Cal. App. 2d 445 (2d Dist. 1951)............................26, 27

19  Deitz v. Comcast Corp., 2006 WL 3782902 (N.D. Cal. Dec. 21, 2006) ....................8

20  Doran v. 7-Eleven, Inc., 524 F.3d 1034 (9th Cir. 2008) ..........................................8

21  Dukes v. Wal-Mart, Inc., 509 F.3d 1168 (9th Cir. 2007) .................................3, 4, 31

22  Engalla v. Permanente Medical Group, Inc., 15 Cal. 4th 951 (1997) ......................21

23  F.T.C. v. Pantron I Corp., 33 F.3d 1088 (9th Cir. 1994) ....................................17, 21

24  Freeman v. Mattress Gallery, 2007 WL 3300717 (4th Dist. 2007) ...........................7

25  FTC v. Braswell, 2005 WL 4227194 (C.D. Cal. Sep. 27, 2005)..............................11

26  Gartin v. S & M NuTec, LLC, 245 F.R.D. 429 (C.D. Cal. 2007) .............................20

27  Gonzales v. Arrow Financial Services, LLC, 233 F.R.D. 577 (S.D. Cal. 2006)........5

    Gonzalez v. Proctor and Gamble Co., 247 F.R.D. 616 (S.D. Cal. 2007) ...............20

28  Goodell v. Chhon, 2002 WL 32943053 (E.D. Cal. June 11, 2002) ...........................8

    Hanlon v. Chrysler Corp., 150 F.3d 1011 (9th Cir. 1998) ......................................33

Hansen v. Ticket Track, Inc., 213 F.R.D. 412 (W.D. Wash. 2003) ...........................................5

Harris v. Del Taco, Inc., 396 F. Supp. 2d 1107 (C.D. Cal. 2005)..........................................8

Healthport Corp. v. Tanita Corp. of America, 2008 WL 2224398 (D. Or. 2008) .....................11

Hicks v. Kaufman & Broad Home Corp., 89 Cal. App. 4th 908 (2d Dist. 2001) .....................29

Hunt v. Check Recovery Systems, Inc., 241 F.R.D. 505 (N.D. Cal. 2007) .........................4, 5

In re MDC Holdings Sec. Litig., 754 F. Supp. 785 (S.D. Cal. 1990) ....................................19

In re Monumental Life Ins. Co., 365 F.3d 408 (5th Cir. 2004) .............................................6

In re Paxil, 212 F.R.D. 539 (C.D. Cal. 2003) .......................................................................30

In re Verisign, Inc., Derivative Litigation, 531 F. Supp. 2d 1173 (N.D. Cal. 2007) ................28

In re Wal-Mart Wage and Hour Employment Practices Litig., 490 F. Supp. 2d 1091 (D. Nev. 2007) .............................................................................................................................29

Irwin v. Mascott, 96 F. Supp. 2d 968 (N.D. Cal. 1999) ...........................................................6

Jenson v. Fiserv Trust Co., 256 Fed. Appx. 924 (9th Cir. 2007) ....................................17, 18

Kagan v. Gibraltar Sav. & Loan Assn., 35 Cal. 3d 582 (1984) .........................................25, 34

Kagan v. Gibraltar, 676 P.2d 1060 (1984)..........................................................................25

Kasky v. Nike, Inc. 27 Cal. 4th 939 (2002) .........................................................................22

Kavu, Inc. v. Omnipak Corp., 246 F.R.D. 642 (W.D. Wash. 2007).......................................5

Laster v. T-Mobile USA, Inc., 407 F. Supp. 2d 1181 (S.D. Cal. 2005) ..................................23

Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507 (9th Cir. 1978) ....................................35

Lozano v. AT & T Wireless Services, Inc., 504 F.3d 718 (9th Cir. 2007) .................18, 25, 32

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) .............................................................8

Massachusetts Mutual Life Ins. Co. v. Superior Court, 97 Cal. App. 4th 1282 (4th Dist. 2002) ............................................................................................................................21

Mirkin v. Wasserman, 5 Cal. 4th 1082 (1993) .....................................................................18

Molski v. Gleich, 318 F.3d 937 (9th Cir. 2003) .....................................................................4

Monarch Plumbing Co. v. Ranger Ins. Co., 2006 WL 2734391 (E.D. Cal. Sep. 25, 2006).....23

Mortimore v. F.D.I.C., 197 F.R.D. 432 (W.D. Wash. 2000) ....................................................6

Nat'l Council Against Health Fraud v. KingBio Pharm., 107 Cal. App. 4th 1336 (2d Dist. 2003) ............................................................................................................................12

Oki America, Inc. v. Microtech Int'l, Inc., 872 F.2d 312 (9th Cir. 1989)..................................29

Oro Bank v. Gamboa, 26 Cal. App. 4th 1686 (4th Dist. 1994)..................................34

Ortal Real Estate & Management, Inc. v. Kaufman, 2008 WL 726169 (Cal. App. 2d Dist.  Mar. 19, 2008) ..................................................................................................28

People ex rel. Dept. of Conservation v. El Dorado County, 36 Cal. 4th 971 (2005) ...............25

Peterson v. H&R Block Tax Services, Inc., 174 F.R.D. 78 (N.D. Ill. 1997) ............................16

Poulous v. Caesars World, Inc., 379 F.3d 654 (9th Cir. 2004) .................................19

Schwarm v. Craighead, 233 F.R.D. 655 (E.D. Cal. 2006) ........................................5

Seaboard Music Co. v. Germano, 24 Cal. App. 3d 618 (1st Dist. 1972) ..............................34

Sears, Roebuck and Co. v. F. T. C., 676 F.2d 385 (9th Cir. 1982)..........................11

Simpson v. Fireman's Fund Ins. Co., 231 F.R.D. 391 (N.D. Cal. 2005) ................................35

Southern Cal. Housing v. Los Feliz Towers Homeow., 426 F. Supp. 2d 1061 (C.D. Cal. 2005) ...............................................................................................................23

Stout v. Turney, 22 Cal. 3d 718 (1978) ...............................................................24

Strickrath v. Globalstar, Inc., 527 F. Supp. 2d 992 (N.D. Cal. 2007) ......................................8

Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137 (9th Cir. 2008) ..............................23

U.S. Bank Nat. Ass'n v. Sterne, Agee & Leach, Inc., 2008 WL 2338016 (9th Cir. 2008) .......17

Vasquez v. Superior Court, 4 Cal. 3d 800 (1971)..................................................16

Wang v. Chinese Daily News, Inc., 231 F.R.D. 602 (C.D. Cal. 2005) ....................................6

Wang v. Massey Chevrolet, 97 Cal. App. 4th 856 (2002)...........................................7

Westland Water Dist. V. Firebaugh Canal, 10 F.3d 667 (9th Cir. 1993)................................28

Whiteway v. FedEx Kinko's Office and Print Services, Inc., 2006 WL 2642528 (N.D. Cal. Sep. 14, 2006) ....................................................................................................32, 33

Williams ex rel. Tabiu v. Gerber Products Co., 523 F.3d 934 (9th Cir. 2008)..................22, 23

Wilner v. Sunset Life Ins. Co., 78 Cal. App. 4th 952 (2d Dist. 2000) ....................................21

Wiseman v. Ikon Office Solutions, Inc., 2008 WL 2756472 (Cal. App. 1st Dist.         Jul. 16, 2008) ....................................................................................................7

Witriol v. LexisNexis Group, 2006 WL 4725713 (N.D. Cal. Feb. 10, 2006) ...........................23

Statutes

Cal. B&P Code §17501 ....................................................................................10

Cal. Bus. and Prof. Code § 17200....................................................................22

Cal. Bus. and Prof. Code § 17500...................................................................22

Cal. Civ. Code § 1770 ..............................................................................22

Cal. Civ. Code § 1770(9)...........................................................................25

Cal. Civil Code §3343...............................................................................24

Civil Code section 1770.............................................................................7

Civil Code section 1780.............................................................................7

CLRA [Cal. Civil Code §1770 .....................................................................14

Rules

Fed. R. Civ. P. 8(e)(2) ...............................................................................29

Other Authorities

Predominant and Superior to None: Class Certification of Particular Issues Under Rule

   23(c)(4)(A), 2002 Utah L. Rev. 249, 299 (2002) ................................................30

The Effects of Discount Level, Price Consciousness and Sale Proneness on Consumers'

   Price Perception and Behavioral Intention, 55 J. Bus. Res. 775 (2002) ........................16-17

# INTRODUCTION

The Plaintiff Class can state a claim against Defendant QVC, Inc. ("QVC") under California's Consumer Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL"), breach of contract, and unjust enrichment, based on QVC's material misrepresentations and/or omissions uniformly and prominently made to the entire Class,[1] that its regular retail price for jewelry products is deceptively presented as a discount.   QVC's "Retail Value" ("RV") representations constitute material misrepresentations because QVC uniformly fails to obtain sufficient substantiation for the advertised "Retail Value" due to numerous inherent flaws in QVC's "category shop" process generating every single "Retail Value" amount.   This misrepresentation is "uniform" for the entire Class because the inherent flaws in the "category shop" process are uniform, and without regard to the particular piece of QVC jewelry or category of QVC jewelry.

QVC's "Introductory Price," ("IP") ██████████████████████ ████████████████, also constitutes a material misrepresentation because the IP misrepresents both the newness of the product, and the urgency in which the customer must purchase the product to get this bargain.  Contrary to QVC's assertion that it offers products at the IP price for only a "limited time," QVC, in fact, ██████████ ████████████████████████████████████████████.

These advertised RV and IP representations also constitute material omissions of fact that this Court may presume every class member relied upon because QVC does not adequately disclose the limitations of the RV representation and does not disclose the unreasonably extended length of time it offers products at the IP.

---

[1] When deciding whether to certify a class, the court need not determine whether Mahfood can state a claim under these causes of action, which is "better addressed on summary judgment."  *Jenson v. Fiserv Trust Co.*, 256 Fed. Appx. 924, 927 (9th Cir. 2007) ("While we recognize that the merits are to some extent intertwined in the determination of whether to certify a class [citation omitted], whether Jenson can state a claim as a matter of law seems better addressed on summary judgment.").

Indeed, it is no coincidence that QVC offers so many products with these reference price and sale price designations.  QVC knows that these advertisements are important to its customers, and that these advertisements materially influence consumers' purchasing decisions.  Therefore, substantial Ninth Circuit and California precedent instructs that this Court may presume that the entire Class relied upon QVC's material misrepresentations and/or omissions.

QVC's Memorandum of Points and Authorities In Opposition to Plaintiff's Motion for Class Certification (hereinafter "QVC's Brief") concentrates it opposition upon the requisites of Rule 23(b), and repeats these 23(b) arguments as grounds for arguing the Class does not satisfy Rule 23(a).  Specifically, QVC first argues that Mahfood cannot certify a Class under Rule 23(b)(2) because she does not primarily seek injunctive relief, and because she lacks standing to seek injunctive relief for the Class.  However, in doing so, QVC wrongly focuses on the aggregate monetary damages caused by QVC's deceptive practices and ignores the actual standard set forth by the Ninth Circuit in determining whether a Rule 23(b)(2) action is proper.  A Rule 23(b)(2) action is proper here because enjoining QVC's false advertising will provide the ideal relief to the greatest number of California consumers.

QVC's next assertion that individual issues will predominate and prevent certification of a Rule 23(b)(3) class, ignore the uniformity of QVC's material representations and omissions that are likely to mislead a reasonable consumer.  Certification of Mahfood's Class under Rule 23(b)(3) is proper because QVC's deceptive RV and IP advertisements predominate over any individual issue that QVC asserts in its opposition brief.  Certification under Rule 23(b)(3) is also the superior method of adjudicating these claims because every class member who purchased a product with either the RV or IP advertisements can state a claim for a deceptive practice that caused them the requisite damage under the CLRA, UCL, breach of contract, and unjust enrichment claims.

1  Finally, QVC's challenge to the Rule 23(a) requisites implicitly concedes
2  numerosity and commonality.  QVC's challenge to typicality provides no legitimate
3  reason why Mahfood's claims, based on QVC's common misrepresentations and
4  omissions, are in fact atypical from the Class, then reasserts these failed typicality
5  arguments (in a footnote) as a basis to show Mahfood will not adequately protect the
6  Class – not even attempting to analyze the proper adequacy standard.

7  <center>**ARGUMENT**</center>

8  **I.   Rule 23(b)(2) Certification Is Warranted Because It Provides Ideal Relief to**
9  **the Most California Consumers.**

10  **A.   <u>Despite QVC's Protestations to the Contrary, Enjoining QVC's Deceptive</u>**
11  **<u>"Retail Value" and "Introductory Price" Representations, From Which</u>**
12  **<u>All Damages Sought Directly Flow Directly, Is Clearly the Primary</u>**
13  **<u>Motivation of this Litigation.</u>**

14  Mahfood's proposed injunctive relief is not only the primary relief, but the *ideal*
15  *relief* to remedy QVC's misleading RV and IP representations, which QVC uniformly
16  disseminates to California consumers via television and Internet media.  QVC admits
17  that the majority of consumers purchasing QVC's products are repeat customers who
18  will be continually misled unless this Court remedies QVC's deceptive business
19  practices.  *See* QVC's Brief, p. 12 ("many QVC customers order a significant number of
20  products form QVC over a period of many years").

21  QVC first disputes the primary nature of Mahfood's injunctive relief on the
22  grounds that Mahfood "continues to press all of her claims for monetary relief" that may
23  total "hundreds of millions of dollars."  QVC's Brief, p. 26.  The Ninth Circuit squarely
24  rejects this basis to deny certification of a Rule 23(b)(2) class because "the *primary goal*
25  of the litigation – not the theoretical or possible size of the damage award" is the
26  relevant inquiry.  *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1186 (9th Cir. 2007) (despite
27  the monetary relief sought "may amount to billions of dollars," the defendant "has not
28  shown that the size of the monetary request undermines Plaintiffs' claim that injunctive

<center>3</center>

and declaratory relief predominate"); *see also Molski v. Gleich*, 318 F.3d 937, 949-950, 956 (9th Cir. 2003) (certification of Rule 23(b)(2) class was proper despite the existence of "substantial monetary damages").

Instead of judging the primacy of Mahfood's injunctive relief based on the size of monetary damages arising from QVC's deceptive business practices, the court is to "examine the specific facts and circumstances of each case, focusing predominantly on the plaintiffs' intent in bringing the suit." *Dukes*, 509 F.3d at 1186 (citing *Molski*, 318 F.3d at 950; *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 860 (9th Cir. 2001); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1240 (9th Cir. 1998)). When focusing on the plaintiff's intent, the Ninth Circuit has regularly examined two factors:

> (1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits.

*Dukes*, 509 F.3d at 1186 (quoting *Molski*, 318 F.3d at 950; *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 164 (2d Cir. 2001)).

Here, both factors weigh heavily in favor of granting injunctive relief because (1) the individual monetary relief available to Mahfood is nominal, (2) Ms. Mahfood has testified in her deposition that her primary motivation for bringing suit was to change QVC's business practices, not seek monetary relief, (3) the injunction is necessary to change QVC's deceptive business practices, and (4) an injunction would offer the best relief to the greatest number of California consumers.

Mahfood's suit satisfies the first factor, that a reasonable plaintiff would bring suit for injunctive or declaratory relief absent monetary damages, because Mahfood's individual damages for three pieces of jewelry are nominal and because Ms. Mahfood brought this suit to change QVC's business practices, not obtain monetary relief. (Madelyn Mahfood Dec. ("Mahfood Dec."), ¶29.) Numerous courts in the Ninth Circuit have found that nominal individual damages weigh in favor of providing injunctive relief for the class under Rule 23(b)(2). *See, e.g., Hunt v. Check Recovery Systems, Inc.*, 241 F.R.D. 505, 513 (N.D. Cal. 2007) (certifying Rule 23(b)(2) class against check

recovery company where individual damages available to the consumers were "nominal"); *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 649 (W.D. Wash. 2007) (finding injunctive relief the primary goal of class action against telemarketer sending unsolicited facsimile advertisements because "it is more unlikely that [plaintiff] would undertake this action, particularly as a class representative, for a recovery that is unlikely to exceed $500"); *Abels v. JBC Legal Group, P.C.*, 227 F.R.D. 541, 546-547 (finding that monetary damages "clearly…do not predominate" in debt collector class action where plaintiff and the purported class sought "actual damages, statutory damages, attorney's fees, costs, and equitable relief"). Therefore, based on the nominal monetary damages and Mahfood's testimony, a reasonable plaintiff is very likely to bring this suit for injunctive and declaratory relief absent monetary damages.

Second, the primary nature of the injunctive and declaratory relief Mahfood seeks is shown by the *appropriateness* of injunctive relief, which would be necessary if Mahfood prevailed on the merits, and would provide the greatest benefit to the greatest number of QVC customers in California (the vast majority of which are repeat customers, according to the QVC Brief, p. 12). Changing QVC's business practices would be necessary if Mahfood prevailed on the merits because all the damages she seeks arise directly from QVC's failure to provide a properly substantiated RV representation and QVC's wrongful use of the IP representation. *See Hunt*, 241 F.R.D. at 513 (injunctive relief sought was primary because all damages "flow directly from" defendant's unfair business practice that plaintiff sought to remedy); *Hansen v. Ticket Track, Inc.*, 213 F.R.D. 412 (W.D. Wash. 2003) (certifying class under both Rules 23(b)(2) and 23(b)(3) arising from defendant's uniform letters to the class); *Schwarm v. Craighead*, 233 F.R.D. 655, 663 (E.D. Cal. 2006) (certifying Rule 23(b)(2) class where all damages flowed from defendant's improper collection efforts); *Gonzales v. Arrow Financial Services, LLC*, 233 F.R.D. 577, 582-583 (S.D. Cal. 2006) (certifying Rule 23(b)(2) class where class's damages arose from defendant's "standardized conduct").

If Mahfood prevails and either QVC's RV or IP disclosures are deemed unfair or deceptive, injunctive relief is the only remedy that would meaningfully correct QVC's business practices.  Moreover, injunctive relief is particularly appropriate here because the vast majority of QVC's customers are, like Mahfood, repeat buyers. ███████████

██████████████████████████████████ QVC's Brief, p. 12.  Therefore, injunctive relief is not only necessary, but particularly appropriate in this case against QVC's ongoing business practices towards repeat customers.  *See In re Monumental Life Ins. Co.*, 365 F.3d 408, 416 (5th Cir. 2004) (certification of Rule 23(b)(2) class particularly appropriate where class members were continuing to pay illicit premiums based on defendant's discriminatory practices). [2]

**B.**   **Mahfood Purchasing QVC Products Advertised with "Retail Value" and "Introductory Price" Representations Provide Her with Standing to Enjoin QVC's Deceptive Business Practices Directly Relating to these Misrepresentations.**

Mahfood has standing to seek injunctive relief on behalf of the Class, pursuant to both the CLRA and UCL, because she suffered injury arising from her purchase of QVC goods advertised with a misleading RV and IP.  Mahfood's Memo of Points & Authorities in Support of Class Certification ("Moving Papers") p. 3.  This damage, as a

---

[2] QVC is mistaken that Rule 23(b)(2) classes only involve suits alleging discrimination, and that "QVC's research has not revealed any case in which a federal court has certified a class action asserting claims under the CLRA or UCL pursuant to Rule 23(b)(2)."  QVC's Brief, p. 28.  QVC is wrong on both counts.   See, e.g., *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 614 (C.D. Cal. 2005) (certifying UCL class under both Rules 23(b)(2) and 23(b)(3)); *Mortimore v. F.D.I.C.*, 197 F.R.D. 432, 438 (W.D. Wash. 2000) (consumer protection class certified under both Rule 23(b)(2) and 23(b)(3) where defendant had incorrectly calculated class of mortgagees' interest rates); *Irwin v. Mascott*, 96 F. Supp. 2d 968, 979 (N.D. Cal. 1999) (certifying Rule 23(b)(2) class for consumers seeking relief under the California Unfair Business Practices Act and the Fair Debt Collection Practices Act).

result of QVC's unfair business practice, is all Mahfood must show in order to represent a class seeking injunctive relief under either the CLRA or the UCL.  *See Wiseman v. Ikon Office Solutions, Inc.*, 2008 WL 2756472, *10 (Cal. App. 1st Dist. Jul. 16, 2008) (holding that "[a]ny person may pursue representative claims or relief on behalf of others" in a UCL action for injunctive relief if that person "has suffered injury in fact and has lost money or property as a result of the unfair competition," pursuant to Proposition 64); *Freeman v. Mattress Gallery*, 2007 WL 3300717, *9 (4th Dist. 2007) ("our Supreme Court has interpreted *Civil Code* section 1780 to state that in order to have standing to bring an action for violation of the CLRA, all a plaintiff need allege is that the defendant violated a provision of *Civil Code* section 1770"); *Wang v. Massey Chevrolet*, 97 Cal. App. 4th 856, 869 (2002) ("actions brought under [the CLRA] are **governed exclusively** by its own provisions") (emphasis added) (citing *Hogya v. Superior Court*, 75 Cal. App. 3d 122, 135 (1977); *Civ. Code*, § 1752).

Indeed, this Court's power to issue an injunction barring QVC's misleading RV and/or IP disclosures is based on the "extraordinarily broad" "remedial power granted" under these statutes.  *Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy*, 4 Cal. App. 4th 963, 970-972 (1st Dist. 1992) (affirming trial court "permanently enjoining the [company selling various raw mild products] from making false or misleading claims about the health, safety, or nutritional qualities of these products, or from making misleading claims about the health standards under which they were produced").  Therefore, Mahfood has standing to pursue an injunction against QVC because: (1) under the UCL, QVC's misleading RV and/or IP disclosures induced her to purchase products from QVC, and (2) under the CLRA, these misleading RV and IP advertisements violated provisions under section 1770, as this Court found in denying QVC's Motion to Dismiss, in part, on November 19, 2007 (Order at page 7).

Moreover, even if this Court were to require Mahfood to show "the possibility of future injury" (*see* QVC's Brief, pp. 20, 28), she easily meets this requirement based on the pervasiveness of QVC's misleading advertisements and her purchase history.  In

determining the likelihood of future harm for purposes of standing, courts in the Ninth Circuit take a pragmatic approach, recognizing that the likelihood of harm is greater when a plaintiff may be harmed in the future "at the spur of the moment." *Harris v. Del Taco, Inc.*, 396 F. Supp. 2d 1107, 1115 (C.D. Cal. 2005) (standing to seek injunctive relief was present where plaintiff suing fast food restaurant could "return … on impulse" or visit the restaurant "at the spur of the moment"); *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1040-1041 (9th Cir. 2008) (while plaintiff was "deterred from visiting" the defendant's store based on its violative conduct, the plaintiff's desire to visit the store after defendant's conduct was enjoined provided plaintiff with standing); *Goodell v. Chhon*, 2002 WL 32943053, *4 (E.D. Cal. June 11, 2002) (finding that unlike *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), in which the plaintiff did not plan to return to Sri Lanka or Egypt, plaintiff had standing to sue for injunctive relief because "the case involves a donut shop within minutes of plaintiff's home, and one in which he likes the food, has reason to go, and would go again if presented with the opportunity").[3]

Here, QVC's misleading advertisements are much closer than a donut shop within minutes of her home – they are <u>in her living room</u>, <u>on her television</u> and <u>computer</u>, and <u>available 24 hours a day</u>.  Indeed, QVC's business model relies upon consumers making "spur of the moment" purchases while watching television, ███████████████████ ████████████████████████████████████.  *See* QVC's Brief, p.12 (███████████████████████████████████████).  Uncoincidentally, "QVC" stands for Quality, Value, and **Convenience**.  QVC has no

---

[3] Unlike QVC's cited cases of *Deitz v. Comcast Corp.*, 2006 WL 3782902, at **3-4 (N.D. Cal. Dec. 21, 2006), *Strickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 996-997 (N.D. Cal. 2007), and *Cattie v. Wal-Mart Stores, Inc.*, 504 F.Supp. 2d 939, 9510952 (S.D. Cal. 2007), Mahfood need not subscribe to defendant's service or purchase the exact same product she had already purchased.  *See* QVC's Brief, p. 21. Here, QVC's injurious and misleading advertisements are continually being sent directly to Ms. Mahfood via her television and computer.

basis to assert that Mahfood will not purchase QVC products in the future,[4] and cannot bury its head in the sand claiming consumers who have purchased from QVC before do not have a propensity to do so again, or that they can or should presume QVC's <u>future</u> "Retail Price" and "Introductory Price" representations are not sufficiently substantiated and misleading.  Therefore, whether this Court requires a "possibility of future harm" in order for Mahfood to seek injunctive relief, which is not required by either the UCL or CLRA statutes, she clearly has standing here.[5]

## II.   Certification Under Rule 23(b)(3) Is Also Proper Based on QVC's Uniform Material Misrepresentations Made to All Class Members.

### A.   The Undisputedly Common Issues of QVC's "Retail Value" and "Introductory Price" Misrepresentations Predominate.

1.   QVC Subjected All of Its Jewelry Customers to the Same Deceptive and Unfair "Retail Value" Practice

QVC substantiates its RV disclosures in a fundamentally flawed manner that does not accurately portray the product's prevailing market price, generally inflating the product's value and misrepresenting the bargain that the customer receives when purchasing from QVC.  *See* Moving Papers at pp. 7-8, 12-13. ████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

---

[4] Tellingly, QVC's repeated assertion that Mahfood does not intend to purchase products from QVC in the future is entirely unsupported by any deposition testimony or any pleadings.  *See* QVC's Brief, pp.12, 20-21, 28.

[5] Whether QVC continues to sell the products Mahfood purchased is of no consequence because QVC continues to provide the same unsubstantiated "Retail Value" and misleading "Introductory Price" representations for its products.  *See* QVC's Brief, p. 27 (arguing injunction is not proper where QVC does not continue to sell the products Ms. Mahfood purchased).

[6] ████████████████████████████████
████████████████████████████████ QVC is obligated to monitor the

Each of these problems with QVC's category shop process ensures that QVC's "Retail Value" representation will be inaccurate,[7] thereby misleading California consumers for each of the "thousands" of "distinct jewelry products" QVC sells with a "Retail Value" representation.  *See* QVC's Brief, p.11.  Moreover, each of these problems with QVC's category shop process are common to *all jewelry products* with a QVC RV advertisement because QVC uses the same category shop process in determining *all* RVs for jewelry products. (Boling Dec. ("BD"), ¶96 (dd-gg)).

While QVC never disputes the Rule 23(a) issue of commonality with respect to QVC's failure to provide an accurate RV to the entire Class based on the inherent flaws

---

prevailing market rate of the comparable products used every three months.  A useable time period for QVC to determine and/or monitor the "prevailing market price" during the period in which the product is being advertised with a disclosed "Retail Value" can be taken from *Cal. B&P Code* §17501, another California consumer protection statute that reflects the same legislative intent and purpose as the California Consumer Legal Remedies Act in protecting consumers and the general public from business practices that are likely to mislead. (See also, Exh. 2 to Altobelli Dec., Opinions and Basis ("*AOB*"), ¶23)

[7] The numerous flaws in the category shop process are not individual issues for "every category and every shop that is conducted," as QVC claims at p. 35 of its brief, but *universal* problems with every category and every shop QVC conducts.   This Court need not examine QVC's substantiation process "separately for each product" (QVC's Brief, p. 35) because QVC's substantiation process is the *same* for every product advertised with a "Retail Value." (BD., ¶96 (dd-gg))

of its "category shop" process that produces the flawed RVs, QVC nonetheless tries to confuse the issue by injecting irrelevant individual issues such as ███████████ ███████████████████████████████████████████████████████ or that the RV representations on these items ████████████████████ QVC Brief, p.11.[8]  However, what commonly binds all the QVC jewelry products sold with a RV, regardless of the number of products, categories, or the amount of the advertised RV, is that QVC discloses a misleading RV due to the inherently flawed "category shop" process.

Whether QVC's inadequately substantiated RV happens to be correct in some circumstances is of no consequence because it is unfair and deceptive for QVC to disseminate its express "Retail Value" claim without reasonably substantiating the claim *before disseminating* the advertisement to California residents.  *Sears, Roebuck and Co. v. F. T. C.*, 676 F.2d 385, 399 (9th Cir. 1982) (affirming Commission's order requiring Sears to make a "reasonable substantiation" of its expressly advertised claims "prior" to an advertisement's dissemination); *American Home Products Corp. v. F.T.C.* 695 F.2d 681, 697 (3rd Cir. 1982) ("When a factual, verifiable proposition is unequivocally asserted in the advertisement…the consumer is **entitled** to assume that the appropriate verification has been performed"); *Healthport Corp. v. Tanita Corp. of America*, 2008 WL 2224398, *6 (D. Or. 2008) (unsubstantiated or improperly substantiated claims made in commercial advertising are deemed "literally false" for purposes of false advertising claims); *FTC v. Braswell*, 2005 WL 4227194, *3 (C.D. Cal. Sep. 27, 2005) (an advertisement is "false" if the claims made are not "substantiated at the time they were made, constituting a deceptive practice, and the making of false advertisements").

---

[8] QVC repeats these arguments later in its brief at p. 34, arguing that ████████ ██████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ What QVC does not dispute is that ████████████████████████████████████████ ████████████████████████████████████████████████████████████.

Therefore, if Mahfood can show that QVC's "category shop" process does not provide accurate retail values for its products based on its inherent flaws, each putative class member *will not* have the burden of proving that every RV representation QVC provided was wrong, as QVC argues at pages 32 to 33 of its opposition brief, because QVC's category shop does not reasonably and properly substantiate QVC's advertised claims. As discussed in the Moving Papers and *infra*, a showing that QVC's "category shop" process is flawed and produces a misleading RV will provide the entire Class with the necessary legal showing to state a cause of action against QVC.[9]

QVC next asserts the existence of individual issues based on QVC's infrequent use of "mini shops"[10] and its subjective method of ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ QVC Brief, p. 34. As for QVC's "mini shops," ▮▮▮▮▮▮▮▮

Therefore, if the category shop process is deemed unfair or deceptive and in violation of California's CLRA and UCL, so too is QVC's "mini shop" process, and the few QVC

---

[9] QVC's cited case of *Nat'l Council Against Health Fraud v. KingBio Pharm.*, 107 Cal. App. 4th 1336 (2d Dist. 2003), at page 43 fn. 12 of QVC's opposition brief does not reject Mahfood's argument that QVC has violated the CLRA and UCL for not properly substantiating its "Retail Value" advertisement. *KingBio Pharm.* merely requires plaintiff to produce "some evidence" that QVC's "Retail Value" claim is false. *KingBio Pharm.*, 107 Cal. App. 4th at 1346. By providing evidence that QVC's category shop and mini-shop processes does not produce accurate retail values for its advertised products, Mahfood has easily satisfied this showing, and QVC's failure to rehabilitate its category shop process confirms Plaintiff's claims at this stage of the litigation.

[10] Because QVC fails to identify which jewelry products use a "mini shop," this Court should not even consider QVC's argument.

1  jewelry products advertised with a RV and substantiated with a "mini shop" should be

2  included in the Class.



(BD, ¶96 (uu-ww)).

16  QVC does not merely have a burden to provide

17  California consumers with an un-inflated retail value representation, but has the duty to

18  provide a retail value that is *accurate* because QVC *chooses* to make this "Retail Value"

19  representation to its customers based on this bargain technique to *increase sales*.  QVC

20  is free to make this representation *only if the representation actually represents the*

21  *retail value*, which is not the case based on QVC's flawed category shop process.

22      2.    QVC's "Introductory Price" Designation Commonly Misleads All

23            Customers that the Jewelry Product Is New and Being Offered at a

24            Reduced Price for a Limited Time.

25      QVC deceptively uses the "Introductory Price" disclosure to increase the sales

26  volume by misleading the consumer into believing that the products are "new," and will

27  only be represented at the IP for a reasonably "limited time."  *See* Moving Papers at 2,

28  8; BD, ¶ 96 (bbbb).  Instead of offering the product at an IP for a reasonably "limited

time," ███████████████████████████████████████

████. [BD, ¶¶ 96 (qqq) & 99.]

█. ███████████████████████████████████████ [BD, ¶ 96 (ppp).]  Moreover, the expert testimony of Plaintiff's expert, Cosmo Altobelli, shows that the IP representation ████████████████████████████████████████. [Altobelli Expert Report, *Opinions and Basis* ("*AOB*"), ¶ 30.]  Therefore, the common issue here, for purposes of class certification, is whether ████████████████████████████████

████████████████████████████, is an unfair and deceptive business practice pursuant to the CLRA [*Cal. Civil Code* §1770 (a) (5), (9) and/or (13)] and UCL.

████████████████████████████████████████ QVC first argues that individual issues predominate because the QVC products were represented with an IP for varying lengths of time.  QVC's Brief, p. 35. ████████████████████████████████████

████████████████████████████ all products were misleadingly advertised, according to Plaintiff's expert. ██████████████████████ and QVC never re-ordered the product for relisting with an IP, QVC's IP designation for that product still violates the CLRA and UCL because QVC represents to consumers that the IP "represents a savings over the regular QVC price."  Moving Papers, p. 2.  Thus, █

████████████████████████████████████, the IP would <u>not</u> represent any savings over the regular QVC price because the IP would be the *only price* for which QVC sold the product.

Next, QVC never explains why the different number of price paths QVC offers creates individual issues with any relevance.  *See* QVC's Brief, p. 36.  Whether a

---

[11] ████████████████████████████████████████████████████████████████████████████████████

████████████ [BD, ¶ 96 (qqq).]

████████████████████ [BD, ¶ 96 (gggg).]

product went from the IP to the "QVC Price" and then to the "Anniversary Price" is of absolutely no bearing as to the misleading nature of the IP comparison.

QVC's last attempt to inject individual issues into the predominating issue of the IP disclosure is that depending on the time at which a consumer purchased the IP product, QVC asserts that the IP may not have been misleading.  QVC's Brief, p. 36. However, an examination of QVC's examples shows the argument's fallacy.  If the consumer in QVC's first example █████████████████████████████████ ████████████████████████████████████████████ and just before it began selling at the QVC Price, the IP price is *still misleading* because the IP product is no longer new.  *See* QVC's Brief, p. 36.  When QVC represents a product as being sold at the IP, it advertises that the product is new – ███████████████████████ ████████████. (*AOB*, ¶30).  Thus, the IP disclosure misrepresents the newness of the product, thereby violating the CLRA and UCL.

QVC's second example, of a customer purchasing the IP item ██████████████ █████████████████ is just as misleading.  *See* QVC's Brief, p. 36.  Again, QVC represents that its products sold at an IP are only sold at this price for a "limited time." Moving Papers, p. 2.  But this is, of course, not the case here, when QVC will end up selling the product at the IP ████████████████████████ all the time being available for purchase at the IP on its website.  Therefore, whether the customer happens to purchase the IP item ██████████████████████████████ QVC's IP advertisement is misleading and violates both the CLRA and UCL for all class members.

**B.**    **The Common Presumption that QVC's Uniform "Retail Value" and "Introductory Price" Representations Are Material and Made to Every Class Member Predominates Over Any Individual Reliance Issues.**

As shown in Plaintiff's Moving Papers, QVC's express and material representations as to the retail value and newness/value of its products, as well as its material omissions regarding QVC's failure to adequately disclose the material limitations of its RV or that products are disclosed with an IP ██████████ ██████████████████████████, provide a presumption of reliance for the entire Class of QVC purchasers because QVC uniformly provided *every class member* with these same material misrepresentations and omissions, regardless of whether the customer purchased the product from QVC's television channel or QVC's website.[12] *See* Moving Papers, pp. 18-23 (citing *Vasquez v. Superior Court*, 4 Cal. 3d 800, 814 (1971)).

Indeed, the materiality of advertised reference prices (e.g., the RV) and advertised sale prices (e.g., the IP) is well established because "consumers do not want to pay full retail price and are always in search of the best deal":

---

[12] QVC asserts that "some" class members may not have seen a "Retail Value" representation before their purchase if the customer (1) searched for the item by product, (2) did not click on the item's picture or product description that provided the "Retail Value" representation, and (3) purchased the product from that search page.  *See* QVC's Brief, pp. 15-16, 38.  First, this does not apply to QVC's misleading "Introductory Price" representation, which is not only present in this search page, but is *highlighted* in orange print with the "QVC Price" crossed out above the "Introductory Price."   Second, this is an entirely hypothetical example in which QVC never provides the number of customers (or *any* customers) who purchased a QVC product in this manner, especially since the items listed as search results contain *no product description* other than the name of the product, which QVC's brief misrepresents to this Court at page 16.  *See Peterson v. H&R Block Tax Services, Inc.*, 174 F.R.D. 78, 82 (N.D. Ill. 1997) (rejecting defendant's "theoretical" and "vague assertions" that some class members may have heard oral representations that differed from defendant's written representations).  Third, the RV advertisement is disclosed to these customers once they click on the product from this search page.

Merchants understand that one of the **central tenets** of market psychology is that consumers do not want to pay full retail price and are always in search of the best deal. As commentators have noted, "[t]he use of an advertised reference price with an advertised sale price focuses consumers' attention on the difference between the two prices. This leads to a perception of greater value concerning the purchase of the product. In addition, consumers are less likely to search other retail locations and have an increased likelihood of purchase."

Bruce L. Alford & Abhijit Biswas, *The Effects of Discount Level, Price Consciousness and Sale Proneness on Consumers' Price Perception and Behavioral Intention*, 55 J. Bus. Res. 775, 775 (2002) (emphasis added).

Thus, it is no coincidence that QVC advertises these reference prices and sale prices to as many products as it can to generate sales. What is unfair and deceptive is QVC's fabrication of misleading reference prices and sale prices so that QVC's customers believe that they are getting the "best deal" when they are not.

Additionally, it is an unfair material omission for QVC not to explain fully the material limitations of its RV and/or IP advertisements. QVC fails to adequately disclose that the advertised RV is not a prevailing retail price, prevailing market price and/or the limitations of the category shop process. (Moving Papers, p. 21) Similarly, QVC never discloses ███████████████████████████████████████████████

███████████████████. *Id.* These material omissions to the entire Class of purchasers create "a rebuttable presumption that the plaintiff relied on the omission" that applies to *every class member* that purchased a product advertised with a RV or IP. *See U.S. Bank Nat. Ass'n v. Sterne, Agee & Leach, Inc.*, 2008 WL 2338016, *2 (9th Cir. 2008) ("In a case involving an alleged omission, upon a finding of materiality there is a rebuttable presumption that the plaintiff relied on the omission.") (citing *Morris v. International Yogurt Co.,* 107 Wash.2d 314 (1986)); *Jenson v. Fiserv Trust Co.*, 256 Fed. Appx. 924, 926 (9th Cir. 2007) (applying presumption of reliance based on material misrepresentations made to consumers investing in Ponzi scheme) (citing *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1095 (1993)); *F.T.C. v. Pantron I Corp.*, 33 F.3d 1088, 1095-1096 (9th Cir. 1994) ("[e]xpress product claims are presumed to be

material"). Thus, the fact that QVC attaches numerous reference prices and sale prices to its products shows the materiality of these representations, which matter to consumers and presumptively influence their behavior.

In response, QVC attempts two strategies in arguing that individual issues of reliance will predominate: (1) arguing that *Vasquez* does not apply to this consumer fraud case (QVC's Brief, pp. 37-39), and (2) class members purchase QVC products for a variety of reasons other than its "Retail Value" and "Introductory Price" advertisements (QVC's Brief, pp. 30, 39).

1.   Individual Issues of Reliance Do Not Predominate Here Because the Presumption of Reliance Provided by the California Supreme Court in *Vasquez*, and Numerous Ninth Circuit Courts Since, Applies to this Class.

QVC first attempts to argue individual issues of reliance will predominate by discrediting *Vasquez*: asserting that the presumption of reliance set forth in *Vasquez* "is permitted only in securities fraud cases," cannot "be proven though class-wide circumstantial evidence," and cannot be presumed "when proposed class members receive a variety of different information." QVC's Brief, pp. 37-39. These contentions are wrong and rely upon inapposite case law.

First, the Ninth Circuit continues to apply *Vasquez*'s presumption of reliance based on class-wide circumstantial evidence in the consumer context. *See, e.g., Jenson v. Fiserv Trust Co.*, 256 Fed. Appx. 924, 926 (9th Cir. 2007) (applying presumption of reliance based on material misrepresentations made to consumers investing in Ponzi scheme, and noting that the presumption of reliance cited in *Vasquez* continues to be applied to class actions) (citing *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1095 (1993)); *Lozano v. AT & T Wireless Services, Inc.*, 504 F.3d 718, 737 (9th Cir. 2007) (affirming certification of UCL class of telephone customers, and finding presumption of reliance "based on uniform disclosures"). Moreover, QVC has no basis to claim that reliance can be presumed in securities cases but not consumer fraud cases because the basis for

reliance in both cases is based a "parallel" premise: "if the representation was material, and the investor [or consumer] acted on the market price by buying or selling the securities [or buying the product], then reliance will be presumed." *See In re MDC Holdings Sec. Litig.*, 754 F. Supp. 785, 799-800 (S.D. Cal. 1990) ("Thus *Vasquez* [in the consumer context] parallels the relaxed requirements of reliance in *Blackie* [in the securities context]") (citing *Zatkin v. Primuth,* 551 F. Supp. 39, 46 (S.D. Cal. 1982); *In re ZZZZ Best Sec. Litig.*, 1989 WL 90284 (C.D. Cal. May 25, 1989)).

Nor does QVC's woefully inapposite case law of *Poulous v. Caesars World, Inc.*, 379 F.3d 654 (9th Cir. 2004), support its position that a presumption of reliance cannot be proven through class-wide circumstantial evidence. QVC's Brief, p. 37. *Poulos* involved a RICO claim in which the plaintiff argued that casinos misrepresented that video poker and video slot machines were "games of chance" when they were in fact "predetermined" by the computer program running the video machine. *Id.* at 659-660. Unlike the uniform and explicit representation as to value and the express claim of newness provided by QVC to every class member, *Poulos* could not show that the representations of "52-card deck," "shuffle," and "draw" provided a causal link between the class members' gambling losses and their reliance on these representations. *Id.* at 666-667. The court found a presumption of reliance upon these implicit statements especially problematic "[d]ue to the <u>unique nature of gambling transactions</u>":

> Indeed, there may be no single, logical explanation for gambling – it may be an addiction, a form of escape, a casual endeavor, a hobby, a risk-taking money venture, or scores of other things. The vast array of knowledge and expectations that players bring to the machines ensures that the "value" of gambling differs greatly from player to player, with some people playing for "entertainment value" or for any number of other reasons as much as to win. Consequently, we conclude that classwide circumstantial evidence would not suffice to prove causation in this case.

*Poulos*, 379 F.3d at 668 (emphasis added).

Thus, *Poulos* provides no justification for barring a presumption of reliance based on the evidence of QVC's uniform and material misrepresentations and omissions to the entire Class.

Next, QVC uses the inapposite cases of *Gonzales*, *Gartin*, and *Caro* to argue that its express misrepresentations and omissions are not actionable because some QVC customers may have "heard different representations" on QVC media or "may not have seen or heard the Retail Value at all." QVC's Brief, pp. 37-39. Unlike each of these cases, QVC provides the express RV or IP misrepresentations to every class member in a prominent manner – highlighting the "Retail Values" and "Introductory Prices" in bold colors and/or crossing out the "QVC Price" to ensure that the California consumers see and rely upon these representations. [BD, ¶96 (oo), (mmmm), (nnnn), (xxxx), (ooooo)] *Compare with Gonzalez v. Proctor and Gamble Co.*, 247 F.R.D. 616, 621 (S.D. Cal. 2007) (no presumption of reliance based on defendant's hair strengthening claim not being made for all products purchased, and not being consistently advertised for those hair products that did sometimes contain this representation), *Gartin v. S & M NuTec, LLC*, 245 F.R.D. 429, 437 (C.D. Cal. 2007) (no reliance where defendants provided different representations to different consumers, and where media reports of allegedly false claims may have informed consumers of misrepresentations), and *Caro v. Proctor and Gambel Co.*, 22 Cal. Rptr. 2d 419, 433 (Cal. Ct. App. 1993) (no presumption of reliance for representations as to freshness and existence of additives for orange juice where named plaintiff did not believe "freshness" representation and where orange juice box told consumers the juice was "from concentrate").

2.  Regardless of Whether QVC Customers Had Other Motivations for Purchasing QVC Jewelry, the Court Can Presume Reliance on QVC's "Retail Value" and "Introductory Price" Representations Because Both Representations Are Material.

Wholly ignoring the material nature of QVC's expressed RV and IP disclosures, the fact that QVC customers may also have purchased items for additional reasons, as QVC argues at pages 30 and 38, is irrelevant for the determination of whether individual issues of reliance predominate because QVC's representations and omissions are material. *See Massachusetts Mutual Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th

1282, 1293 (4th Dist. 2002) ("As we held in *Vasquez,* an inference of reliance arises if a material false representation was made to persons whose acts thereafter were consistent with reliance upon the representation.") (citing *Occidental Land, Inc. v. Superior Court*, 18 Cal. 3d 355, 363 (1976)).   California courts find this "inference of justifiable reliance" arises for every class member "[i]f the court finds that a reasonable [person] would have relied upon the alleged misrepresentations."  *Wilner v. Sunset Life Ins. Co.*, 78 Cal. App. 4th 952, 963 (2d Dist. 2000) (citing *Vasquez v. Superior Court*, 4 Cal. 3d at 814).    Moreover, "materiality is generally a question of fact unless the 'fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it.'"  *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 977 (1997) (quoting Restatement 2d Torts, § 538, cmt. e (1965)).

Notably, QVC does not argue in its brief that the RV and IP representations are not material.  This is because QVC knows that both representations induce customers to purchase QVC's products.  [BD, ¶96 (oo), (xxxx), (ooooo); *AOB*, ¶¶ 1-4]; *see also Pantron I Corp.*, 33 F.3d at 1095-1096 ("[e]xpress product claims are presumed to be material").   Therefore, because QVC's RV and IP representations are material, this Court may presume that the entire Class relied on QVC's express claims.

**III.    Certification of Mahfood's Class Is the Superior Means of Adjudicating These Claims Against QVC.**

**A.    Mahfood's Class Consisting of All California Residents Who Purchased QVC Jewelry Products Disclosed with an RV or IP Selling Price Is Manageable Because Every Class Member Can State the Same Claims Against QVC as Plaintiff Mahfood.**

1.    All Class Members Can State a Claim Under the CLRA and UCL Because QVC's RV and IP Material Representations Are Likely to Mislead a Reasonable Consumer, All of Whom Received QVC's Uniform Misrepresentations and Made Purchases Consistent with Those Misrepresentations.

The CLRA and UCL similarly prohibit unfair or deceptive business practices. *See Williams ex rel. Tabiu v. Gerber Products Co.*, 523 F.3d 934, 938 (9th Cir. 2008) (the UCL "prohibits any 'unlawful, unfair or fraudulent business act or practice," including "unfair, deceptive, untrue, or misleading advertising" pursuant to California's false advertising law; the CLRA "prohibits 'unfair methods of competition and unfair or deceptive acts or practices") (quoting *Cal. Bus. and Prof. Code* § 17200; *Cal. Bus. and Prof. Code* § 17500; *Kasky v. Nike, Inc.* 27 Cal. 4th 939, 950 (2002); *Cal. Civ. Code* § 1770). Making these claims particularly well-suited for class treatment, "claims under [the UCL and CLRA] are governed by the 'reasonable consumer' test." *Williams*, 523 F.3d at 939 (quoting *Freeman v. Time, Inc.,* 68 F.3d 285, 289 (9th Cir. 1995); *Lavie v. Procter & Gamble Co.,* 105 Cal. App. 4th 496, 506-07 (2003)). Therefore, under the "reasonable consumer" test, the lead plaintiff need not show that the Class was *actually deceived*, but instead "show that 'members of the public are *likely to be deceived*.'" *Williams*, 523 F.3d at 939 (quoting *Freeman,* 68 F.3d at 289) (emphasis added).

Mahfood has made this class-wide showing under both the CLRA and UCL because she has shown (1) QVC's RV advertisement is not adequately substantiated due to ███████████████████████████████████████████████

22

1    ████████████, and (2) QVC's express IP representation, ████████████

2    ████████████████████, misrepresents both the newness of the product

3    and urgency by which the consumer must purchase the product in order to get the

4    reduced price.  *See, supra,* Section II.A.2.  Therefore, QVC's RV and IP advertisements

5    constitute unfair or deceptive business practices under both the CLRA and UCL for the

6    entire Class.

7         (a)    <u>UCL Damage:</u>  *All Class Members Can Show the Requisite*

8              *"Injury in Fact" Because Every Class Member Expended Money*

9              *Due to QVC's Deceptive Business Practice.*

10        Under Proposition 64, which amended the UCL in November 2004, a plaintiff

11   must sustain an "injury in fact and [have] lost money or property as a result of such

12   unfair competition."  *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th

13   Cir. 2008) (quoting *Cal. Bus. & Prof. Code* § 17204).  In *Anderson*, the California

14   Appellate Court examined this requirement under the UCL, and after extensively

15   surveying both California state and federal courts, found three alternative means by

16   which a plaintiff has suffered the requite injury: "(1) that money was expended by the

17   plaintiff due to the defendant's acts of unfair competition," "(2) that money or property

18   was lost or suffered a diminution in value," or "(3) that plaintiff was denied money to

19   which plaintiff had a cognizable claim."  *Anderson v. Riverside Chrysler Jeep*, 2007 WL

20   3317819, *3 (Cal. App. 4th Dist. Nov. 8, 2007) (citations omitted).  Therefore, if every

21   class member expended money due to QVC's RV or IP representations, they can state a

22   claim under the UCL.  *See Id.* (citing *Aron*, 143 Cal. App. 4th at 802-803; *R & B Auto

23   Center, Inc. v. Farmers Group, Inc.*, 140 Cal. App. 4th at 360; *Monarch Plumbing Co.

24   v. Ranger Ins. Co.*, 2006 WL 2734391 (E.D. Cal. Sep. 25, 2006); *Witriol v. LexisNexis

25   Group*, 2006 WL 4725713 (N.D. Cal. Feb. 10, 2006); *Southern Cal. Housing v. Los

26   Feliz Towers Homeow.*, 426 F. Supp. 2d 1061, 1069 (C.D. Cal. 2005); *Laster v. T-

27   Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005)).

28

Here, every class member has purchased a QVC item uniformly advertised with a deceptive RV or IP representation that satisfies the UCL's damage element because, based on *Vasquez*'s presumption of reliance, this Court may presume that QVC's material misrepresentations and omissions caused the class member's purchase.

Moreover, the customer's <u>additional payment</u> of shipping and handling also counts as a distinct "expenditure" that every class member made in order to receive the given QVC product advertised with either a RV or IP.  Each class member has sustained a loss of his/her purchase money that includes the out of pocket amounts of the selling price of the subject products **and the quantifiable <u>consequential</u> costs** consisting of shipping and handling charges in buying the QVC products.  A defrauded party may recover additional damages <u>even if</u> no out-of-pocket loss was suffered. *See Stout v. Turney*, 22 Cal. 3d 718, 729-730 (1978).   The statutory phrase in *Cal. Civil Code* §3343 "any additional damage arising from the particular transaction" has been understood as referring to "expenses or other consequential injury resulting from the fraud." *Bagdasarian v. Gragnon*, 31 Cal. 2d 744, 762-763 (1948).   Each class member's payment of shipping and handling costs in purchasing the subject products are a direct and separate consequence and a quantifiable <u>monetary loss</u> incurred in reliance upon Defendant's alleged misleading advertisement regarding the comparative pricing practices. Therefore, every class member "expended money" "due to the defendant's acts of unfair competition," and every member of the class can state a claim against QVC under the UCL.

> (b)  <u>*CLRA Damage:*</u>  *All Class Members Suffered "Injury in Fact" under the More-Lenient CLRA Standard Because Each Suffered the Invasion of a Legally Protected Interest – QVC's Deceptive Advertisements.*

The California Appellate Court in *Anderson* next examined what "damages" a plaintiff must plead in order to state a claim under the CLRA, finding that the CLRA had an even more lenient standard of damage than the UCL.  *See Anderson*, 2007 WL

3317819, **5-6 (holding that because the UCL only allowed for monetary damages of restitution, while the CLRA allowed for actual and punitive damages, a plaintiff need not enter into a "transaction" with defendant in order to state a CLRA claim).  After examining the language of the CLRA, and specifically examining the false advertising section of *Cal. Civ. Code* § 1770(9), the appellate court held that, unlike the UCL, "it was not necessary for [plaintiff] to plead that she suffered damages as the result of the consummation of a transaction in order to state a cause of action for violation of the CLRA."  *Id.* at *6.

Unlike the UCL, where plaintiff that must show she received the false advertisement and expended money due to that false advertisement, the CLRA plaintiff need only show that she suffered "an invasion of a legally protected interest" to prove "injury in fact."  *Id.* at *3 (citing *People ex rel. Dept. of Conservation v. El Dorado County*, 36 Cal. 4th 971, 986 (2005)). Therefore, all class members easily satisfy the damage requirement of the CLRA because the purchasers of QVC products that are advertised with deceptive RV or IP each received uniform and prominent deceptive advertisements before making their purchases.  *See Kagan v. Gibraltar Sav. & Loan Assn.*, 35 Cal. 3d 582, 593 (1984) ("Accordingly, we interpret broadly the requirement of section 1780 that a consumer 'suffer[ ] any damage' to include the infringement of any legal right as defined by section 1770.")[13]   Thus, all class members here can state a claim under the CRLA.

---

[13]  QVC is wrong that the Ninth Circuit's holding in *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718, 730-731 (9th Cir. 2007), heightened the damage requirement above the damage requirement set forth in *Kagan v. Gibraltar*, 676 P.2d 1060 (1984), which this Court followed in its ruling denying in part QVC's motion to dismiss Mahfood's Second Amended Complaint.  *See* QVC's Brief, pp. 40-41.  *Lozano* merely held that all class members "suffer[] some resulting damage," which the court could not presume for the class, unlike here, because the allegedly deceptive unconscionable contract language was not material to class members. *Lozano*, 504 F.3d at 730-731 (citing *Wilens v. TD Waterhouse Group, Inc.,* 120 Cal. App. 4th 746 (4th Dist. 2003)).  Here, the RV and IP representations are material, according to *Vasquez* and its progeny; and,

2.    All Class Members Can State a Breach of Contract Claim Against QVC for Its Misleading Representations Inducing Class Members Into Entering Into a Contract with QVC.

As this Court held in its February 7, 2007 order denying QVC's Motion to Dismiss Mahfood's breach of contract claim, "[a] claim of breach of contract is established when the Plaintiff can demonstrate the existence of a contract, Plaintiff's performance thereof, Defendant's breach, and damages resulting therefrom." Dkt. No. 53 at page 10 (citing *Acoustics, Inc. v. Trepte Construction Co.*, 14 Cal. App. 3d 887, 913 (1971)). If a defendant makes false statements that induced plaintiff into entering into the contract, a plaintiff may sue to recover the amount expended or, alternatively, rescind the contract. *Davisson v. Faucher*, 105 Cal. App. 2d 445, 448 (2d Dist. 1951) (where a party pays consideration to enter into a contract based on defendant's false statements, "it is nevertheless obvious that such damages, and those alone, were at best recoverable").[14]

Here, every class member that purchased jewelry with a RV or IP advertisement from QVC can state a claim for breach of contract claim against QVC, just like Mahfood, because the advertised RV or IP bargains are false, due to the RV's inadequate substantiation and the IP ███████████████████████████████ ███████████████████████████████████████████████████████ ████████████████████████████████████. Additionally, QVC materially omits the inadequacies of the RV substantiation due to inherent flaws in the "category shop" process, and does not disclose that the IP ███████████████████████

---

therefore, this court may presume that these deceptive misrepresentations caused the resulting damage of the class members' injury.

[14] Proof of damage will not require individual inquiry (see QVC's Brief, p. 45) because, based on the *Vasquez* presumption of reliance discussed above, the material RV and IP representations and omissions fraudulently induced all class members into entering into their contracts with QVC. Therefore, all class members will have damage equaling the amount they paid QVC, and may seek either monetary damages or rescission.

█████████████████   According to *Vasquez*, the Court may presume that these material representations and omissions induced the class members' purchase. Therefore, every class member can rescind the transaction and sue for the price they paid for the misrepresented jewelry.

Ignoring this Court's February 7, 2007 ruling, QVC first argues that the RV and IP representations are mere "expectations" that must be determined individually for each class member, and that individual questions will arise as to whether other class members had these "expectations." QVC's Brief, pp. 44-45. QVC's unsupported assertion has no basis in law, and runs directly contrary to this Court's holding that "the terms of the contract included the advertised bargain figures." Order Granting in Part and Denying in Part QVC's Motion to Dismiss (Feb. 7, 2007), page 10. Because every class member who purchased QVC jewelry advertised with a RV or IP advertisement presumptively viewed and relied on these prominent misrepresentations QVC prominently displayed on both its television and Internet media, these advertised bargain figures constitute terms of the contract, just as they did for Ms. Mahfood.

Moreover, the amount or frequency of substantiation necessary for each class member is not an individual question if this Court rules that the "category shop" process that determines the "Retail Values" is inherently flawed and uniformly apply to all California consumers.

Similarly misplaced, QVC asserts that an individual inquiry will be necessary to determine whether QVC actually breached the RV representation for each class member. QVC's Brief, p. 45. Again, whether QVC's "Retail Value" happened to be correct for a given product in a given region at a certain time is of no consequence if QVC has not adequately substantiated the "Retail Value" prior to its dissemination, through the "category shop" process. *See, supra,* Section II.A.1. Further, QVC did not disclose to any class members the numerous flaws in its "category shop" process that produced every "Retail Value" advertisement. When QVC advertises to its customers that a product has a specific "Retail Value," QVC is representing to all consumers that it

27

has adequately substantiated the same for its products.  If QVC's RV is not adequately substantiated based on the inherent flaws in the process detailed above, then QVC breached its contract with all purchasers based on its RV misrepresentation.

3.  All Class Members Have Claims Against QVC for Unjust Enrichment Based on QVC Unjustly Retaining the Class Members' Fraudulently Induced Payments.

All class members have a claim for unjust enrichment against QVC because (1) QVC received the monetary benefit of a customer purchasing its product advertised with a RV or IP, and (2) it would be unjust to allow QVC to retain the benefit at the class members' expense because the material and misleading RV or IP presumptively led to the class members' purchases.  *See* Order Granting in Part and Denying in Part QVC's Motion to Dismiss (Nov. 6, 2006), at page 9 (citing *Westland Water Dist. V. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993)).   QVC subjected every class member purchasing the jewelry advertised with an RV or IP to a misleading statement and omission, and QVC now retains the revenue received from each class member.

QVC argues that the mere existence of a contract negates the Class's claim for unjust enrichment.   QVC's Brief, p. 46.   However, "[b]enefits conferred under a contract may be subject to restitution if the contract is rescinded or determined to be unenforceable."  *Ortal Real Estate & Management, Inc. v. Kaufman*, 2008 WL 726169, *8 (Cal. App. 2d Dist. Mar. 19, 2008) (citing 1 Witkin, Summary of Cal. Law, Contracts, § 1042, pp. 1132-1133 (10th ed. 2005)).   Here, every class members' contracts with QVC are subject to rescission based on the misleading RV or IP inducing class members to purchase QVC products.

Moreover, if the Court finds that the Class's claims of breach of contract and unjust enrichment are mutually exclusive at the time of summary judgment or trial, "for pleading purposes, plaintiffs are entitled to assert claims in the alternative and to plead inconsistent causes of action."  *In re Verisign, Inc., Derivative Litigation*, 531 F. Supp. 2d 1173, 1217 (N.D. Cal. 2007) (upholding plaintiffs' breach of contract and unjust

enrichment claims) (citing Fed. R. Civ. P. 8(e)(2); *Oki America, Inc. v. Microtech Int'l, Inc.,* 872 F.2d 312, 314 (9th Cir. 1989); *In re Wal-Mart Wage and Hour Employment Practices Litig.,* 490 F. Supp. 2d 1091, 1117 (D. Nev. 2007)).

   **B.   Alternatively, this Court May Certify the More Limited Classes Mahfood Sets Forth in Her Class Certification Brief.**

   Each of the alternative subclasses Mahfood provides in the Moving Papers, pp. 9-10, offer innovative ways for this Court to certify a class against QVC for its fraud.  *See Hicks v. Kaufman & Broad Home Corp.*, 89 Cal. App. 4th 908, 925-926 (2d Dist. 2001).

   First, if this Court determines that the only error with QVC's "category shop" process is that ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████  Moving Papers, p. 10.

   Alternatively, if this Court finds that Plaintiff's expert testimony as to the failure of QVC substantiating its RV applies only to the categories the expert examined (ignoring the inherent flaws uniform to all categories), the Court may certify a class of only the Southwestern, Sterling with Gems, Gemstone Sterling, and/or Costume categories of items that Plaintiff purchased.  *Id*.; *see* QVC's Brief, p. 34-35 (arguing that the issue of whether QVC properly substantiated its RV representation differs "for every category and every shop conducted").

   If this Court agrees with QVC's unsupported claim that some class members may have purchased products QVC's website search screens, and, therefore, did not see the RV misrepresentation, this Court may certify a class only consisting of QVC class members that saw the misrepresentation on QVC's television channel and ordered the product by phone, or only certify a class of Internet purchasers.  Moving Papers, p. 10.

   Last, this Court may certify any of these classes on the single issue of QVC's liability in regard to its misleading RV or IP representations.  *Id*. at 10.  This option would preserve significant resources of both the Court, the class members suing QVC

29

individually, and even *QVC* since no litigation would be needed as to whether QVC's RV or IP representations are misleading.

> Issue certification is often a happy medium between individual cases and a global class action. The efficiency arises from collective resolution of the issues common to the class; fairness is retained by separate resolution of individual issues, mutuality of preclusive effect, and class members' right to opt out if they so desire.

Romberg, Jon, *Half a Loaf is Predominant and Superior to None: Class Certification of Particular Issues Under Rule 23(c)(4)(A)*, 2002 Utah L. Rev. 249, 299 (2002).

As shown in this litigation, proving the falsity of QVC's representations has taken two experts and over a year of litigation, all before Mahfood moved to certify her Class. Therefore, if this Court held that (1) Mahfood could not certify any of her classes under Rule 23(b)(2), and (2) that individual inquiries would predominate under Rule 23(b)(3) with respect to these classes, the liability-only class is an option that would still preserve judicial resources and resources of the parties.

Unlike the product liability suit brought in QVC's cited case of *In re Paxil*, 212 F.R.D. 539 (C.D. Cal. 2003), Plaintiff's CLRA claim, for instance, is particularly well-suited for a liability-only class because injunctive relief does not depend on actual fraud or pecuniary loss, but instead on the likelihood to mislead undertaken by any person in a transaction intended to result or which results in the sale of goods to any consumer. *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 679 (2d Dist. 2006). Therefore, upon Mahfood's showing of QVC's advertising to be false or misleading, this Court may certify a class as to this issue and allow class members to merely show they were individually deceived.  While Mahfood has shown that certification of her larger class is clearly warranted, these other innovative methods of certifying one or more subclasses against QVC will each meaningfully preserve resources of the parties and of the courts.

**IV.    Plaintiff Satisfies the Requisites of Rule 23(a), of which QVC Only Disputes Typicality and Mahfood's Adequacy in Representing the Class.**

In arguing whether Mahfood satisfies the requisites of Rule 23(a), QVC does not dispute that the class is "so numerous that joinder of all members is impracticable," nor disputes that "there are common issues of law or fact common to the class." *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1177 (quoting Fed. R. Civ. P. 23(a)(1), 23(a)(2)). Instead, QVC only argues whether Mahfood's claims are typical of the Class's claims against QVC, and merely reasserts her typicality arguments as a basis to deny Mahfood's adequacy.    QVC's Brief, 19-25, fn. 8.    Specifically, QVC argues that Mahfood does not satisfy typicality (and apparently adequacy as well) because (1) she does not have standing to bring an injunction based on QVC's unsupported assertion that Mahfood is not threatened by future deceptive QVC advertisements, (2) unique defenses pertain to Mahfood based on her "unusual purchasing experience" and her relationship with just one of the firms representing Mahfood in this action, and (3) no uniform injury exists based on individual issues among the Class.

Each of these arguments fail, as shown below, because Mahfood's injury arising from the unfair and deceptive RV and IP representations easily meets the standard Mahfood's claims are "reasonably coextensive with those of absent class members," *see Californians for Disability Rights, Inc. v. Cal. Dept. of Transp.*, 249 F.R.D. 334, 346 (N.D. Cal. 2008) (citing *Dukes*, 509 F.3d at 1184), and because even if taken as true, QVC's arguments are not relevant or do not defeat typicality.

**A.    Mahfood's Claims Against QVC Are Typical of the Entire Class's Claims Against QVC for Its Misleading "Retail Value" and "Introductory Price" Representations.**

Typicality is met "[w]here the challenged conduct is a policy or practice that affects all class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). Where the lead plaintiff and class members must "make similar legal arguments to prove the defendant's liability," courts find typicality met. *Cervantez v. Celestica*

*Corp.*, 2008 WL 2949377, *9 (C.D. Cal. Jul. 30, 2008) (plaintiff's claims were typical because they arose from the same security procedures as the Class).  Mahfood's Class satisfies the typicality standard because she was subjected to the same unfair and deceptive RV and IP disclosures as the entire Class – all of whom purchased QVC products with an RV or IP.   Thus, Mahfood, like the entire Class, will need to show that QVC's RV and IP advertisements are misleading and that she suffered damage from this unfair and deceptive business practice.

> 1.   Mahfood Does Have Standing to Seek Injunctive Relief for Herself and the Class, But She Meets Typicality Regardless.

QVC's assertion that Mahfood is not a typical class member because she lacks standing to seek injunctive relief is wrong, and even if it were true, does not defeat typicality.  *See Lozano*, 504 F.3d at 734 ("Under Rule 23(a)(3), it is not necessary that all class members suffer the same injury as the class representative.") (citations omitted).  As shown above in section I.B., Mahfood can seek an injunction because she suffered the requisite injury under both the UCL and CLRA, which is all she must show.  Moreover, if this Court required her to show a threat of repeated injury exists, the pervasive nature of QVC's false advertisements make it extremely likely that she would suffer the same infringement of a legal right she did before.  While QVC asserts that "she [does not] plan to buy from QVC in the future," QVC has absolutely no support for this contention (QVC's Brief, p. 20-21).  Indeed, QVC's practice of regularly displaying the misleading RV and IP representations in *Mahfood's living room* through QVC's television channel makes it very likely that Mahfood will again be subjected to these misleading representations.

Additionally, even if this Court found that Mahfood lacked standing to seek injunctive relief, this is no basis to find that she is not a typical class member because "the fact that Plaintiff is ineligible for one of several damage remedies sought does not defeat the typicality requirement."   *Whiteway v. FedEx Kinko's Office and Print Services, Inc.*, 2006 WL 2642528, *7 (N.D. Cal. Sep. 14, 2006).  Assuming arguendo

that Mahfood does not have standing to seek an injunction under the UCL and CLRA, her claims are still "reasonably co-extensive with those of absent class members," such that typicality is not affected. *Id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

### 2.    No Unique Defenses Pertain to Mahfood that Affect Typicality.

While QVC asserts that Mahfood lacks typicality because of an "unusual purchasing experience" and "her relationship with counsel," QVC fails to provide any analogous case law supporting its insinuations.  QVC's Brief, p. 22-24.  As for QVC's "relationship with counsel," QVC ignores that Mahfood has no prior relationship with co-counsel Clinton A. Krislov, who, as shown in his Declaration filed with Mahfood's Motion for Class Certification, has twenty-five years of experience litigating class actions.  Additionally, merely because Mr. Mahfood referred his sister, Ms. Mahfood, to Mr. Boling shows no conflict of interest.  Mr. Mahfood had no conversation with Boling before March 2006 regarding QVC, and first learned of Madelyn Mahfood's QVC purchases after her last purchase. Madelyn Mahfood came to him seeking legal advice. Mr. Mahfood has no referral fee or fee splitting agreement with Boling on this matter. [SDB, ¶ 9(a-f)].  QVC's innuendo an insinuations about Mr. Boling's relationship with Ms. Mahfood provide no basis to find that her claims are not typical of the Class's, or that she will not adequately protect the interest of the Class.

Second, QVC has no unique defenses against Mahfood that defeat her typicality. QVC asserts that her failure to return her products for a full refund upon her dissatisfaction with the products and realization that QVC's RV representation was misleading subject her to defenses of waiver and unclean hands.  QVC's Brief, p. 23. However, QVC brings no legal citations supporting these baseless assertions.[15] Mahfood's rejection of QVC's refund offer for the Amethyst Earrings during this

---

[15] Most offensive of all these baseless assertions is that Mahfood was "seeking to bring suit."  QVC's Brief, p. 23.  Again, Ms. Mahfood had no discussions with either her brother, Mr. Boling, or Mr. Krislov prior to her QVC purchases.

33

litigation does not negate her existing CLRA claim. "The rule of mitigation of damages has no application where its effect would be to require the innocent party to sacrifice and surrender important and valuable rights." *Valle de Oro Bank v. Gamboa*, 26 Cal. App. 4th 1686, 1691 (4th Dist. 1994) (citing *Seaboard Music Co. v. Germano*, 24 Cal. App. 3d 618, 623 (1st Dist. 1972); s*ee also Kagan v. Gibralter Sav. and Loan Assn.*, 35 Cal. 3d 582 (1984).    Having filed this action and diligently prosecuting the same, Mahfood was not required to accept the refund offer made by QVC during litigation, which would have cause her to surrender an important and valuable right to her existing consumer protection claims against QVC.[16]   To reason otherwise would allow any wrongdoer the opportunity to avoid justice during a pending litigation by "picking off" a representative or individual plaintiff.

     3.    QVC's Supposed "Individual Inquiries" Among the Class Are Issues of Predominance, Not Typicality.

QVC's last attempt to defeat the Rule 23(a) requisite of typicality is to argue the Rule 23(b)(3) issue of individual issues predominating among the Class.  QVC's Brief, p. 24.  Indeed, "[s]ome degree of individuality is to be expected in all cases," and this will not defeat typicality.  *Californians for Disability Rights, Inc.*, 249 F.R.D. at 346 (citing *Dukes*, 509 F.3d at 1184).  The correct typicality inquiry is "not the injury caused to the plaintiff," but "on the defendants' conduct and plaintiff's legal theory."  *Simpson*

---

[16] Additionally, QVC's offer of refund for the Amethyst Earrings was inadequate because it requested purchasers insure earrings the customers were to send back to QVC by mail, but did not offer to reimburse them for this additional expense, and never acknowledged that it would be obvious to QVC that the earrings were not amethyst. [BD, ¶ 102 (j)] ███████████████████████████████████████████████████████████████████████████ (QVCC 2546 – Ex.3 of Boling Dec.). ███████████████████████ (BD. ¶79).  Moreover, this issue is irrelevant to the "Retail Value" and "Introductory Price" advertisements because QVC's refund letter never mentioned the deceptive nature of these representations.

1  *v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005) (quoting *Rosario v.*

2  *Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992)).  Here, typicality exists because QVC

3  acted in the same manner to every class member by uniformly providing misleading RV

4  and IP representations in a prominent manner to every class member.  Additionally, as

5  shown in section II.B., these individual inquiries of injury and reliance will not

6  predominate under Rule 23(b)(3).

7  **V.    Mahfood and Her Counsel Will Adequately Protect the Class.**

8      QVC does not argue adequacy by the proper standard of (1) whether the class

9  representative has interest antagonistic to the unnamed class members, or (2) the

10  representative must be able to prosecute the action vigorously through qualified counsel.

11  *See Cervantez*, 2008 WL 2949377, *9 (quoting *Lerwill v. Inflight Motion Pictures, Inc.,*

12  582 F.2d 507, 512 (9th Cir. 1978)).  QVC does not explain how Mahfood might have

13  interests antagonistic to unnamed class members, or that she will not prosecute the

14  action vigorously.  Thus far, Ms. Mahfood has successfully endured an extensive

15  deposition, and provided declarations supporting her counsel's filings.  Simply put,

16  QVC's typicality arguments fail to provide a basis to defeat Ms. Mahfood's adequacy.

17                                     **CONCLUSION**

18      Because class treatment of this action satisfies the requisites of Rule 23(a) and fits

19  comfortably within the 23(b)(3) category, the proposed Plaintiff Class, or any

20  alternative class/subclass, should be certified for each claim in the Fifth Amended

21  Complaint.

22                               Respectfully submitted,

23

24

25  Dated:  August 22, 2008            By: /s/ M. Reas Bowman

26                                        M. Reas Bowman
                                          Attorney for Plaintiff

27

28